All right. Mr. Bennett. Thank you, Your Honors. May it please the Court, my name is James Todd Bennett. I'm representing the Petitioner and Appellant in this case, Baisong Huang. I'd like to reserve possibly two minutes for rebuttal. The essential issue in front of this Court is whether the Petitioner and Appellant is entitled to protection under the refowler provisions of Article III of the Convention Against Torture, where, by way of habeas corpus or by way of the deferral provided by the regulations under the Foreign Affairs Reform and Restructuring Act 1998, as provided in 8 CFR Section 208.8.17, the under circumstances where there's a final order, administrative order of removal, which was a pre-regulatory order, and where the appellant has suffered an aggravated felony conviction subsequent to the enactment. Out of the – just straight out, the only relief that Mr. Huang would have been possibly eligible for would have been a deferral under the Convention Against Torture under the structure of the regulations that implement the Article III of the Convention Against Torture, not eligible for withholding on the face of his conviction and on the face of the regulations. Well, assuming that's correct, the structure of the statute seems to me very clearly says, you know, you apply for withholding, and if you're not eligible for that, but you are entitled to protection under the convention, then deferral is mandatory. True. But the way the structure – two different forms of relief have been carved out, sure, and the concerns in carving those structures out was first to create a withholding claim under the convention, which did not run afoul of the withholding provisions of the Immigration and Nationality Act. That is in a separate section, and that is the regulations there are put together with the withholding under the Immigration and Nationality Act provisions, regulations as well. The place where the issue of whether you have to pursue both claims, that's the issue – one of the issues in front of the Court. Well, Mr. Huang, as I've indicated, clearly couldn't pursue a withholding under any and all circumstances. Well, that's not really – I mean, it may be clear to you. It's not necessarily clear to me that a money laundering conviction would have that – assuming it's correct, what's the difficulty? It applies for withholding, and if he isn't entitled to it, if you're correct that he's not entitled to it, then he has – but he's entitled to protection, he's going to get deferral. Well, the language of the – part of the implementing regulations, and I think the key provision is 208.18b2, clearly says, first of all, that the motion to reopen is discretionary. In other words, I don't have to file a motion, but if I do, there are mandatory things I must comply with. Second important thing to note about the motion to reopen is that it refers only to the withholding provision. It does not refer to the deferral provision. It specifically says, only for the purposes under the amended regulation, which was subsequently amended the following year, only – you may only make this motion to reopen solely for the purpose of pursuing a withholding claim. And you've got to show a prima facie case. Well, your claim is that you're entitled to protection under the convention. The relief that you get if you prove that claim is withholding, or if you're not entitled to withholding, then you get deferral, isn't it? Not if you're prima facie precluded from withholding. And that's the issue here. I just don't understand that. There is a – the issue is his offense that he's convicted of is an aggravated felony on its face under the 8 U.S.C. 1101A43D, the subsection of the definitions. Perhaps I didn't say it very clearly. The claim that you have is to protection under the convention. And the relief that you get if you establish that claim, that is, if you establish your right to protection, is either withholding or in default of withholding deferral, isn't it? If you make both claims. I don't think you're equal. If the statute says you make a claim for withholding and if you aren't entitled to withholding with its benefits, then it's mandatory, you shall get deferral, which has somewhat fewer benefits. Well, not just fewer benefits, but also more stringent – there's, excuse me, custodial elements that come into play. It's a completely different form of relief. There's – custody can continue. You would be subject to removal under very expedited provisions should there be change of country conditions. It's certainly a different form of relief in terms of the benefits that you receive. I think that if you do not have a – in this case, Mr. Wang's, the issue – previous way they applied the Convention against Torture prior to the regulations is, I think, somewhat instructive of the kind of relief that we're requesting here. It would be under the old pre-regulatory scheme was they would never apply the Convention of Torture until after all administrative remedies had been exhausted. In other words, the position that Mr. Wang's in at this point. And I think the same sort of remedy is at least implicit in the regulation here. It's saying withholding, and this is what you must do to ask for a withholding. It says nothing about what you do if you're applying for deferral only.  They're under entirely different subsections, and they have entirely different parameters as to the consequences and the rights and duties under that relief. If he's outside of the provisions of 208.18b2 on a straight deferral claim, then his only option here is to go ahead and file a 90-day filing period, and that's the only option that currently goes, would be a motion to reopen under the INA, which has, I think, currently been recodified under 8 U.S.C. 1229AC6C, which requires a 90-day filing period, and again, he's outside of the loop there. So the issue is, does he need to exhaust, and that's a second issue here in terms of his entitlement to any kind of relief whatsoever. I think in this particular case, since it is a discretionary form of relief, even under the regulation it says may, it's a discretionary form of relief. I think that takes him outside of the exhaustion requirements to come before the Court. Discretionary form of relief, you mean the motion to reopen is discretionary, is that what you're saying? Yes. And since it's not a matter of right, I believe he's entitled to habeas jurisdiction as appropriate, and that's the appropriate vehicle to address this particular problem arising under this scheme. I'd like to reserve the remaining time I have, and Mr. Olson. Good morning, Your Honors. May it please the Court, Edward Olson from the U.S. Attorney's Office on behalf of the Respondent, John Ashcroft. The District Court properly denied the habeas petition in this case because the alien failed to follow the proper procedure that's set out in the Convention Against Torture Regulations. Specifically, he failed to file a motion to reopen to seek relief under CAT. The regulations provide that where, as is the case here, an alien's removal order became effective prior to March 22, 1999, that the alien has to file a motion to reopen to seek CAT relief prior to June 22, 1999. How does it phrase it? What does it say? He has to file a motion? It doesn't say an alien has to file a motion. The regulation says if you're interested in CAT relief, this is the procedure that you follow, and it sets forth a June 22, 1999 deadline. Petitioner didn't file a motion to reopen within that deadline, and in fact, didn't file a motion to reopen at all. And in the opening brief, hasn't provided any explanation for the failure to follow that procedure. It's your position, then, that even if it were still timely, he couldn't bring a habeas petition now. I mean, he couldn't bring a habeas petition before that 1999 cutoff without first exhausting your position. True. That is my position. Now, although it wasn't raised in the habeas petition, at the hearing in the district court, the petitioner made the argument that this June 22, 1999 deadline applied only to aliens who were seeking relief under CAT, called withholding of removal, as opposed to deferral of removal. But there's absolutely no support for that distinction in the regulation itself. There's also no support for that distinction in the comments to the regulation. And as a matter of policy, it really wouldn't make any sense to distinguish between alien seeking withholding of removal and alien seeking deferral of removal, because it would effectively reward aliens who have been convicted of criminal offenses to give them an extension of time to file their motion to reopen. If it's true that aliens who are only seeking the relief of deferral of removal don't have to comply with that June 22, 1999 deadline, it effectively rewards them for falling within one of the statutory bars to seeking withholding of removal, such as persecution of others or having been convicted of a particularly serious crime. Now I do, I will have to say that the provision which sets forth that June 22, 1999 deadline, and that's in 1208, it's now codified at 8 CFR 1208.18 B2, that provision does refer to 1208.16 C and not to 1208.17. 1208.16 C is the regulation that talks about withholding of removal, 1208.17 is the regulation which talks about deferral of removal. But that's simply a reflection of the point that Judge Reimer was making, that an alien files a single claim for relief under CAT. Now the relief that you may get varies depending on whether or not you've been convicted of a particular serious crime or you've persecuted others or you've engaged in, there is a reference actually to participation in Nazi persecution. If you fall within one of those statutory bars, the relief you can get at a maximum will be deferral of removal. But an alien files a single application for relief under CAT. So it makes some sense that the regulation which sets forth the June 22, 1999 deadline refers to 1208.16 C because that's the application you file. It's also, if you read further down in the regulation, this again is 1208.18 B2 which sets forth this deadline, it talks about, well you first have to file your motion within June 22, 1999, but secondly you also have to make a showing of why you're entitled to A, withholding of removal or B, deferral of removal. So it wouldn't make any sense for the language after the deadline to refer to both kinds of relief if the deadline only applied to those seeking withholding of removal. I suppose by now or by the time the district court rules we're almost not talking about exhaustion anymore, we're talking about waiver or forfeiture or something because at least the way we do it in state habeas cases, we say that his remedies are exhausted now because there's nothing left that he could possibly do, he can't go back and exhaust anything. So we're really, I guess, saying that there's been a forfeiture or something. Yeah, I guess it depends on how you characterize exhaustion, but I would say yes, exhaustion also includes the case where you no longer have the ability to exhaust because for one reason or another you didn't follow the procedure by the deadline. Now, that's not to say that an alien can't file a motion to reopen with the BIA saying to the BIA this presents such an egregious situation that you should exercise your sua sponte powers to open up my removal proceedings and let me apply. That wasn't done in this case either. I should also point out that the claim that the alien was going to be subjected to torture was first raised in 2001 when the alien was picked up for some criminal offenses. Now at that point, the alien had not been convicted of any aggravated felony. So the idea that from the very beginning this person was only eligible for deferral of removal is simply not accurate. At that point in time, in 2001, the person had not been convicted of any crimes. In 2003, after the criminal proceedings went forward, ultimately, yes, the alien was convicted of an aggravated felony and may or may not be eligible for withholding of removal, but I did want to correct that at that point. And finally, I should say that to the extent that the alien is relying on Noriega Lopez saying in all situations you don't have to exhaust, occasionally you can bring a petition for writ of habeas corpus even though you haven't exhausted, that case has no application here. That case, it was a strictly legal issue. The alien was saying the BIA doesn't have the authority to enter a removal order. What the BIA has to do is remand to the IJ for the IJ to enter a removal order. That was a strictly legal issue. And so the court said a motion to reopen with the BIA is generally the proper procedure. You should have asked the BIA to do that. But in this case, as a prudential ground, we'll excuse that because a motion to reopen is discretionary. The BIA doesn't have to reopen. It's a purely legal question, and there's no concern here that the alien deliberately bypassed this administrative scheme. In this case, by contrast, this is not a purely legal issue. The question is whether or not the alien has established that it's more likely than not that he will be tortured upon his return to China. That's not a purely legal question. It's also obviously not the case that the alien didn't deliberately bypass the administrative procedure. The alien knew as early as 2001 that he had this potential cat claim and then didn't do anything until 2003, days before he was scheduled to be removed. He files a case. Get into that timeline again. When was his removal order? The First Circuit Court of Appeals affirmed the BIA's removal order in 1997. Okay. The person didn't show up for his scheduled release. And then the convention, relief under the convention becomes available in? 1999. 99. And there's a cutoff for filing motions to reopen. Correct. Later in 1999. Correct. The regulations say, well, we should give these people who have already been removed but for one reason or another are still in the country a brief window of time to make use of these regulations. And then his conviction came after the deadline for motions to reopen? Correct. Okay. And I should just briefly address that if for one reason or another the court concludes that the district court erred by deciding that the court lacked habeas jurisdiction, I think as a matter of law it's clear that the abuse or the treatment, however you want to characterize it in this case, that the alien was subjected to simply doesn't rise to the level of torture. Torture is an extreme form of cruel and inhuman punishment. It's beyond cruel and inhuman. The regulations specifically say it's an extreme form of cruel and inhuman treatment. And the allegations in this case, assuming they're all true, as set forth in the declaration, which is in the petitioner's excerpts of records, simply don't rise to that level. There's also been no presentation of why he would continue to be subjected to this treatment when he's returned to China 13 years after this alleged abuse occurred in this factory that he worked in. There's no reason why he'd have to go back to that factory or back to that same city. And there's absolutely no reason, in my view, looking at the record to conclude that the torture that he was allegedly subjected to came at the hands of a government official. The only connection that I can see is that the factory boss, which directed others to steal his motorcycle and they gave him a bloody nose and they revoked his household registration and instigated his incarceration for 48 hours, his father at some unspecified time was the mayor of the city. That's the only connection I can see to the torture being at the hands of a government official, which the regulations clearly require. The panel has any further questions? I don't think so. Thank you, Mr. Aitken. Thanks. Mr. Bennett. Just briefly, Your Honors. First of all, when the petition was filed, he was an aggravated felon. That is, I mean, at the point of the filing, he had been convicted. The conviction came first and then the petition was filed in terms of chronology. Secondly, I believe the issue in front of the court is a legal issue, which goes outside of the prudential doctrine. And then finally, as far as the prima facie eligibility, the gentleman was working in a state enterprise, and according to the declarations, which were accepted as credible by the BIA and by the First Circuit, reversing the immigration judge's finding, found that he had been forced, based on those declarations, he was forced to work in the enterprise, threatened with harm if he quit, told he had to keep working, even though he knew there was slave labor being involved in the production of these genes with this joint enterprise with the Hong Kong company. In terms of psychological pressure, and the declaration clearly shows that the man suffering from psychological harm from having to continue to participate in this enterprise, which he is attempting to blow the whistle on. Secondly, acquiescence from the police officer saying, there's nothing we're going to do about this, despite the fact that your boss is putting pressure on you and you have been beaten. And we submit it on that ground. Thank you. Thank you, counsel. The matter just argued will be submitted.
judges: Canby, Rymer, Hawkins